**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-03248-MSK-MJW

ALAN C. LAMMLE,

    Plaintiff,

v.

BALL AEROSPACE & TECHNOLOGIES CORPORATION,

    Defendant.

---

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendant Ball Aerospace & Technologies Corporation's Motion for Summary Judgment **(#116)**. The *pro se* Plaintiff Alan C. Lammle has not responded to the motion.[1]

### I. Material Facts

Where a party fails to respond to a motion for summary judgment, the Court does not reflexively grant relief to the movant. Rather, it must examine the movant's submissions to determine whether the movant has met its burden of demonstrating that no material issues of fact remain for trial. *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002); Fed. R. Civ. P.

---

[1] Mr. Lammle was given numerous opportunities to file a response. The motion for summary judgment was filed on December 17, 2012. On February 12, 2013, the Court granted **(#133)** Mr. Lammle's first request for more time to respond. The Court specified that no further extensions would be granted. On February 21, 2013, Mr. Lammle filed a second motion for extension of time **(#138)**, and on March 21, 2013, he filed a third motion for an extension of time to "respond to existing motions" **(#145)**. By text order on April 2, 2013, the Court granted in part **(#146)** Mr. Lammle's requests for more time. The Court ordered that Mr. Lammle had 14 days in which to comply with any pending deadline. Still, no response was filed. Despite having nearly four months to respond to the motion, Mr. Lammle has failed to do so. The Court therefore considers the motion without a response.

56(e)(3). In doing so, however, the Court deems Mr. Lammle to have conceded the truth of any properly-supported facts alleged by the Defendant. Fed. R. Civ. P. 56(e)(2). With that standard in mind, the Court turns to the facts as asserted in the Defendant's motion.

In 2005, Mr. Lammle was hired by Ball Aerospace & Technologies Corporation (Ball), an information technology company, as a computer technician in the Information Management (IM) Department. In that position, Mr. Lammle served as the dedicated technician for engineers working at Ball. He was responsible for servicing and repairing their computers, troubleshooting software problems, and performing service calls to the engineers.

In June 2008, Mr. Lammle was hospitalized with pancreatitis. Due to his health problems, Mr. Lammle took a leave of absence from work until March 3, 2009. Upon returning to work, Mr. Lammle discovered that in his absence, the IM Department had been reorganized. Mr. Lammle was told that he would no longer be providing field support to the engineers. Instead, he was assigned to a service desk position. At the service desk, Mr. Lammle was responsible for providing remote computer service to all customers. Mr. Lammle continued to receive the same salary and benefits as he did before his leave of absence.

Shortly after returning to work, Mr. Lammle complained to his supervisors that he had been demoted. He also complained that he was not being provided with sufficient training for his new position. In an e-mail sent to the Human Resources manager, Toya Specman, Mr. Lammle stated that he thought he would eventually be laid off because of his age and his "perceived disability." About a week later, Mr. Lammle's wife and former attorney, Amy Jane Simmons, sent a letter to Ball's legal department, alleging that Mr. Lammle had been falsely accused of sleeping on the job and that the accusation was part of a scheme intended to bring about Mr. Lammle's termination. On March 27, 2009, Ms. Simmons sent another letter to Ball's

legal department.  Ms. Simmons alleged that Mr. Lammle was suffering "harassment" because his pay was not directly deposited into his bank account that afternoon.

On March 31, 2009, Mr. Lammle filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  In his Charge, Mr. Lammle alleged that he had been "discriminated against based on [his] age, 47, in violation of the [ADEA] and based on a perceived disability . . . in violation of the ADA."  Specifically, he alleged that after his "demotion," he was "subjected to harassment and adverse terms and conditions of employment when [Ball] failed to give [him] appropriate training, and access to tools needed to perform the duties of [his] reassigned position."  He further alleged that he was "issued a fabricated verbal warning [for sleeping on the job] under threat of termination on March 20, 2009."

In April, Mr. Lammle sent another e-mail to Ms. Speckman, raising additional allegations of harassment.  In addition his allegations of being denied training and not being paid properly, Mr. Lammle alleged that another service desk employee appeared to have a web camera directed at him, so that "[he] could be fired for sleeping on the job" if he even "blinks or closes his eyes." Finally, in May, Ms. Simmons wrote another letter to Ball's legal department.  She alleged that not only was Mr. Lammle being monitored by web cam and remote access of his desktop, but that someone was going through his personal lunchbox.  She alleged that someone had stolen a used insulin syringe out of his lunchbox.  Ms. Simmons suggested that perhaps the syringe was taken so that it could be tested for other substances and used "to fabricate another reason to terminate [Mr. Lammle]."

In June 2009, Mr. Lammle was hospitalized again.  After he was discharged, Mr. Lammle did not report back to work.  Instead, he began a second leave of absence.  When he returned to work on December 1, 2010, he was informed that his position had been filled.

3

Mr. Lammle received a right to sue letter from the EEOC in September 2011. He then commenced this action. As narrowed by earlier proceedings, Mr. Lammle has three remaining claims in this case: (1) disability discrimination under the Americans with Disabilities Act (ADA), (2) age discrimination under the Age Discrimination in Employment Act (ADEA), and (3) common law intentional infliction of emotional distress. Ball seeks summary judgment on each claim.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P.

56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III. Analysis

#### A. Claims under the ADA and ADEA

Mr. Lammle presents two theories of recovery for each of his statutory claims. First, he claims that he was subjected to disparate treatment because of his age and/or perceived disability when he was reassigned to a service desk position and was not provided training related to his new position.[2] Second, Mr. Lammle claims that since he returned to work, he was repeatedly harassed and subjected to a hostile work environment because of his age and/or perceived disability, in violation of the statutes.

---

[2] Mr. Lammle's statutory claims are limited by the scope of his allegations in the charge of discrimination submitted to the EEOC. *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *see also Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

1. Disparate Treatment

Mr. Lammle claims that when he returned to work in March 2009, he was "demoted" to an office position and was denied training on certain software systems.

The ADA provides that "[n]o covered entity shall discrimination against a qualified individual on the basis of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on a disparate treatment or discrimination claim under the ADA, Mr. Lammle must show that Ball intentionally discriminated against him for a reason prohibited by the statute. *Jaramillo*, 427 F.3d at 1306. In so doing, Mr. Lammle must make out a *prima facie* case, showing that (1) he is a disabled person as defined by the Act; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) his employer discriminated against him because of his disability. *See Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). To demonstrate "discrimination" under the third element, Mr. Lammle must show that he suffered an "adverse employment action because of the disability." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011). Similarly, to establish a *prima facie* case under the ADEA, Mr. Lammle must prove that (1) he is a member of the class protected by the ADEA; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) he was treated less favorable than others not in the protected class. *Jones*, 617 F.3d at 1279.

When, as here, there is no direct evidence of discrimination, the Court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-02 (1973). The *McDonnell Douglas* framework applies to Mr. Lammle's discrimination claims

under both the ADA and the ADEA. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005); *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1278 (10th Cir. 2010). Under this framework, Mr. Lammle must first make out a *prima facie* case of discrimination, as described above. If he is successful, the burden shifts to Ball to articulate a legitimate, nondiscriminatory reason for its employment actions. If Ball proffers such a reason, the burden shifts back to Mr. Lammle to ultimately show that the stated reasons are merely "pretextual." *McDonnell Douglas*, 411 U.S. at 804-05.

Assuming, without necessarily finding, that Mr. Lammle could establish a *prima facie* case on the undisputed facts here, Ball has carried its burden by proffering a legitimate, non-discriminatory reason for Mr. Lammle's change in employment conditions in March 2009 — namely, that Mr. Lammle's reassignment was necessary due to the reorganization of the IM Department. Ball proffers that the reorganization was due to budgetary concerns and the need to create more efficiency. It also proffers that Mr. Lammle was not provided training on certain computer systems because other service desk employees were already providing support on those systems. Thus, to survive summary judgment, Mr. Lammle must show a genuine dispute as to whether Ball's proffered reasons for its employment decisions are pretextual. In other words, Mr. Lammle must show that the stated reasons are untrue, and that age and/or disability discrimination was the real reason.

An employee produces sufficient evidence of pretext when he shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" for its actions that a reasonable fact finder could rationally find them unworthy of belief and therefore infer that the employer did not act for the asserted non-discriminatory reasons. *Jaramillo*, 427 F.3d at 1308. The Court is mindful that when evaluating

7

pretext, the pertinent question is not whether the employer's proffered reasons were right, wise, or fair, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

In support of their position, Ball proffered the affidavit of Toya Speckman, its Senior Human Resources Manager. Ms. Speckman testified that in 2008, budgetary constraints required that IM Department improve its efficiency and lay off several employees. The evidence shows that the reorganization of the IM Department resulted in greater use of outside contractors, thereby reducing the need for Ball's technicians to work in the field. Further, the IM Department began delegating a higher volume of service calls to the service desk, where computer technicians could resolve problems remotely. Ms. Speckman testified that to implement the necessary layoffs, the IM Department manager, John LaFalce, conferred with the Human Resources and together they compared each employee's skills and performance level to those possessed by other layoff candidates and Ball's operational requirements. Ms. Speckman testified that the review identified three candidates for layoff — Mr. Lammle was one of them. She testified that although Ball laid off the other two candidates, it did not lay off Mr. Lammle. Ball opted instead to reassess its needs when Mr. Lammle returned from his leave of absence. Ms. Speckman stated that the individuals who were laid off were 28 and 30 years old, and neither was disabled. The evidence shows that although Mr. Lammle previously provided dedicated support to Ball's engineers, after the reorganization, Ball employees no longer served in that capacity. Ms. Speckman testified that when Mr. Lammle returned to work in March 2009, no technician positions involving field work were available. She stated that because Ball needed a service desk position filled when Mr. Lammle returned, he was assigned to that position. Ms. Speckman testified that there were at least two other individuals who were

8

formerly computer technicians who were assigned to the service desk during the reorganization. One of those individuals was 54 years old, and the other was 36 years old; neither of them was disabled.

The evidence also shows that Ms. Speckman explained to Mr. Lammle that he had not received training on the "IFS" computer system because another service desk employee was already providing assistance on that system. During Mr. Lammle's performance review in June 2009, he was informed on how to access free online training and given suggestions for ways that he could increase his knowledge base and advance his career. Indeed, Mr. Lammle admits that he eventually did receive extensive training related to his position at the service desk.

Having reviewed the record, the Court finds that there is nothing to support an inference that Ball's proffered reasons for Mr. Lammle's reassignment and any denial of training are unworthy of belief. There is nothing implausible, inconsistent, or contradictory about Ball's reasons for its employment decisions. Rather, it appears that the decision-makers at Ball made choices that they determined were in the best interest of the company. Accordingly, the Court finds that nothing in the record that creates a genuine dispute of fact as to whether Ball's proffered reasons for changes in his employment were pretextual. Thus, Ball is entitled to summary judgment on Mr. Lammle's claims.

2. Hostile Work Environment

Mr. Lammle claims that, beginning in March 2009 when he returned to work, he was subjected to harassment. Ball moves for judgment in its favor on this claim, arguing that Mr. Lammle cannot prove that he was subjected to severe or pervasive harassment that altered the conditions of his employment, nor can he prove that the alleged harassment occurred because of his age or disability.

For a hostile environment claim to survive summary judgment, the plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult that were sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment, and the harassment stemmed from age- or disability-related animus. *See Mackenzie*, 414 F.3d at 1280; *Lanman v. Johnson Cnty., Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004). To evaluate whether a working environment is sufficiently hostile or abusive, the Court examines the totality of the circumstances, including the frequency of the conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Additionally, the environment must be both subjectively and objectively hostile. *Id.*

Applying these principles, the Court concludes that the record falls far short of showing age- or disability-related harassment. Several of Mr. Lammle claims of harassment relate to the employment decisions made by Ball, such as the reassignment and denial of training. These decisions cannot be considered "harassment" because they were not undertaken for the purpose of intimidation, ridicule, or insult. Mr. Lammle also alleges that (1) he was "falsely accused" of sleeping on the job, (2) a webcam allegedly was used to spy on him, (3) he was allegedly yelled at on two occasions by his manager, (3) he did not receive his direct deposit on time, and (4) someone allegedly stole a used syringe from his lunchbox. Mr. Lammle has not come forth with any evidence to establish the truth of each of these allegations. Assuming he could do so, and assuming that these incidents could be considered forms of harassment, there is simply nothing in the record to support an inference that what happened to Mr. Lammle was *because of* his age or a perceived disability. Accordingly, the Court finds that there is no genuine dispute of fact

with regard to Mr. Lammle's hostile work environment claims under the ADA and ADEA, and Ball is entitled to judgment on these claims.

### B. Intentional Infliction of Emotional Distress

Finally, Mr. Lammle claims that he suffered severe emotional distress as a result of the "comments, actions, and inactions of [Ball]." He alleges that Ball failed to "provide any relief or assistance to [him,] severely altered [his] employment circumstances and created a hostile employment environment."

Under Colorado law, a plaintiff may recover for the tort of intentional infliction of emotional distress (otherwise known as "outrageous conduct") if the plaintiff proves that (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff to suffer severe emotional distress. *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009). Ball argues that Mr. Lammle cannot prove any of these elements.

Before permitting a plaintiff to present a claim for outrageous conduct to a jury, however, the Court must rule on the threshold issue of whether the plaintiff has alleged conduct that is outrageous as a matter of law. *Coors Brewing Co. v. Floyd*, 978 P.2d 663 (Colo. 1999). A claim for outrageous conduct contemplates only acts that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Destefano v. Grabrian*, 762 P.2d 275, 286 (Colo. 1988).

Here, it appears Mr. Lammle alleges that Ball engaged in outrageous conduct when it took certain employment actions against him, and when it failed to prevent the "discrimination" from occurring. To the extent Mr. Lammle relies on the same conduct that formed the basis of

11

his statutory claims, that conduct cannot be used as the basis of his claim for intentional infliction of emotional distress.  *See Emerson c. Wembley USA Inc.*, 433 F.Supp.2d 1200, 1228 (D.Colo. 2006); *see also Katz v. City of Aurora*, 85 F.Supp.2d 1012, 1021 (D.Colo. 2000) (noting under Colorado law, where the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim).  Disregarding Mr. Lammle's allegations that form the basis of his statutory claims, his only allegations as to his outrageous conduct claim are that Ball failed to "assist and/or attempt to rectify the discrimination."  As to those allegations, the Court finds that they are not sufficiently outrageous to support a claim for outrageous conduct.  Indeed, as noted above, Mr. Lammle has failed to establish that he was subjected to discrimination.  Accordingly, the Court finds that Ball is entitled to judgment on this claim.

## IV.  Conclusion

For the forgoing reasons, the Defendant's Motion for Summary Judgment **(#116)** is **GRANTED**.  Judgment shall enter in favor of the Defendant on all of the Plaintiff's claims, and the Clerk of the Court shall close this case.

Dated this 1st day of September, 2013.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge